IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PATRICK LEO SHORTY,<br><br>                     Petitioner,<br><br>    vs.<br><br><br>EARL L. HOUSER, Superintendent III,<br>Goose Creek Correctional Center,<br><br>                     Respondent. | No. 3:19-cv-00223-JKS<br><br>MEMORANDUM DECISION |

      Patrick Leo Shorty, a state prisoner now represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Shorty is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Goose Creek Correctional Center. This Court recently denied the petition for habeas relief filed by Shorty's co-defendant, Patrick Leichty, in *Leichty v. Houser*, No. 3:19-cv-00283-JKS. Shorty's Petition arises from the same facts but raises different issues than those involved in Leichty's case. Respondent has answered, and Shorty has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

      Shorty was charged with first-degree sexual assault, resisting arrest, providing false information, and fourth-degree assault in connection with an attack on B.A., a seventeen-year-old girl, by three men in a vacant field. Shorty filed several pretrial motions. On direct appeal of

-1-

his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Shorty and the adjudication of his pretrial motions:

> On July 8, 2003, a young woman named B.A. encountered three men at the Anchorage Transit Center. After a brief conversation, the four began walking together towards the Carrs store at 13th Avenue and Gambell Street. As they walked through a vacant field, one of the men tripped B.A. and took her backpack. A younger man then held B.A. down while an older man raped her and repeatedly punched her in the face. The younger man raped B.A. after the older man had finished. The third man then alerted his companions that police were nearby, and the three men quickly fled on foot. Shortly afterwards, B.A. ran to a nearby patrol car and flagged down Officer Leonard Torres for help.
> 
> Officer Torres saw three men running from the scene. Chasing them down, Torres apprehended Thomas Leichty, whom B.A. identified as one of the three men who assaulted her. Leichty later told another officer that he could not remember his role in the assault because he was intoxicated. However, Leichty did recall that his friend—a man he knew as "Shorty"—had sexually assaulted B.A. Leichty also mentioned that he had been in prison with Shorty; using this information, officers were able to get the name of Patrick Leo Shorty from the Tundra Correctional Center.
> 
> After receiving Shorty's name, Detective Kenneth D. McCoy showed B.A. a photo lineup of suspects. B.A. chose two photos from the lineup, one of which was of Shorty. Proceeding on Leichty's statement, B.A.'s description of the crime, and her tentative identification of Shorty, McCoy applied for and obtained a search warrant for Shorty's DNA, clothing, and other biological material on July 16, 2003. This warrant was good for ten days. McCoy also had the police dispatchers issue a "stop-and-hold locate" directive, asking any law enforcement officials who contacted Shorty to detain him so that McCoy could execute the search warrant.
> 
> On July 26, 2003, the tenth day after the search warrant was issued, the police dispatcher received an anonymous tip that Shorty was near 10th Avenue and Ingra Street wearing a green trench coat. Officers Gregory Witte and Andy Cottle separately responded to the resulting dispatch. Witte responded first and found a man matching the description given by the dispatcher. Witte approached the suspect and asked the man to identify himself, and he responded that his name was "Harold Gregory." He initially said that he was born in July 1969, then said that he was actually born in 1968, and later suggested that his birthday was actually in August. He also did not know his social security number.
> 
> Witte attempted to confirm this information with the Alaska Public Safety Information Network database, but the name "Harold Gregory" registered no matches. At the same time, both Witte and Cottle also believed that the suspect was preparing to flee. When Witte then confronted the suspect about his inconsistent birthdays, he stopped talking. At that point, Witte decided to arrest the man—who was in fact Patrick Shorty.
> 
> The officers began to grab Shorty's arms, but he pulled the officers into a nearby alley. The officers took Shorty to the ground, and Cottle attempted to control Shorty's head while Witte tried to control Shorty's arms. During the melee, Cottle applied a vascular restraint that momentarily rendered Shorty unconscious; when he regained consciousness, he quickly resumed fighting. When Officer Christopher Ritala arrived, however, the three police officers were able to secure Shorty.
> 
> At the police station, Shorty detailed his account of the assault to Detective McCoy. According to Shorty, he could not remember his exact role because he was intoxicated, but did remember that Leichty had sex with B.A.

-2-

>       McCoy then obtained a new search warrant authorizing collection of Shorty's
> DNA because he believed that the previous warrant had expired. After obtaining samples
> from both Shorty and Leichty, the police compared them to an original DNA swab taken
> from B.A. The results showed that Shorty was almost certainly the source of the sperm
> sample contained in the swab from B.A. The results also indicated that Shorty was the
> likely source of a sperm sample contained in a penile swab taken from Leichty.
>       Shorty was then charged with two counts of first-degree sexual assault, one count
> of resisting arrest, one count of fourth-degree assault, and one count of providing false
> information to a peace officer. Prior to trial, he filed a motion to suppress all of the
> evidence stemming from his arrest—arguing that he was detained and arrested without a
> warrant and without probable cause. After two evidentiary hearings, Superior Court
> Judge Michael L. Wolverton ruled that the officers had probable cause to arrest Shorty
> and that no arrest warrant was needed.
>       Judge Wolverton also denied Shorty's motions to sever the charges for separate
> trials, to dismiss the indictment, and alternative motions asking the court to dismiss the
> misdemeanor charges or require a bill of particulars. But the judge granted Shorty's
> motion to suppress the statement he made to Detective McCoy following his arrest
> because he concluded that the statement had been coerced by McCoy's threat of harsher
> treatment.

*Shorty v. State*, 214 P.3d 374, 377-78 (Alaska Ct. App. 2009) (footnotes omitted).

Following a jury trial, Shorty was convicted as charged. He was subsequently sentenced to an aggregate imprisonment term of 31 years and 30 days.

Through counsel, Shorty appealed his conviction, arguing that: 1) the police lacked probable cause for his arrest, and the trial court erred in refusing to suppress the fruits of the unlawful seizure; 2) the trial court erred in refusing to dismiss the indictment; 3) the trial court erred in refusing to sever the misdemeanor counts from the felony; 4) there was insufficient evidence presented to sustain his resisting arrest conviction; 5) there was insufficient evidence to sustain his conviction for misdemeanor assault; and 6) the trial court erred in allowing the State to amend the charge of providing false information. In a unanimous, reasoned opinion issued on August 7, 2009, the Court of Appeals agreed that the trial court improperly allowed the prosecution to substantively amend the charge of providing false information to a peace officer, and reversed Shorty's conviction on that count, but affirmed the judgment against Shorty in all other respects. *Shorty*, 214 P.3d at 385. The record does not indicate that Shorty sought hearing in the Alaska Supreme Court.

Shorty then filed a *pro se* application for post-conviction relief. After his request for counsel was granted and counsel appointed, Shorty filed an amended petition for post-conviction relief alleging ineffective assistance of both trial and appellate counsel. The superior court denied the motion in a reasoned, unpublished opinion issued on October 21, 2015. The Court of Appeals affirmed the denial in a summary disposition issued on April 10, 2019. Shorty filed a petition for hearing in the Alaska Supreme Court, which was summarily denied on July 29, 2019.

Shorty timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated August 12, 2019. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). After counsel for Shorty was appointed, an Amended Petition was filed, Docket No. 25 ("Petition"), which is now ripe for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Shorty argues that his trial counsel rendered ineffective assistance by failing to impeach B.A. with psychiatric record and personal statements indicating that she had a history of symptoms consistent with bipolar disorder.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly

-4-

established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

-5-

rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Shorty argues that he was denied his Sixth Amendment and due process right to the effective assistance of trial counsel because trial counsel failed to impeach B.A. with psychiatric records and personal statements indicating that she had a history of symptoms consistent with bipolar disorder, which he contends corresponds with poor decision making, unnecessary risk-taking, and impulsivity. Although Shorty concedes that counsel lacked records establishing that B.A. had been diagnosed with that condition, he contends that "both her and her mother's descriptions of B.A.'s bipolar tendencies would have added considerable support to Shorty's consent defense."

As an initial matter, Respondent urges the Court to dismiss Shorty's claim as unexhausted and procedurally defaulted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. To satisfy the "fairly present" requirement, the petitioner must present his or her federal claim to "each appropriate court (including a state supreme court with powers of discretionary review)" so that the each court is alerted to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). In Alaska, this means that claims must first be presented to the Alaska Superior Court. If the petitioner disagrees with that result, the claim should be raised to the Alaska Court of Appeals, and if he disagrees with that result, the claim should be raised in a petition for hearing to the Alaska Supreme Court.

Respondent argues that Shorty failed to present to the Alaska Supreme Court the federal basis of his ineffective assistance claim, and that his arguments before this Court are fundamentally different than those raised in the state court. But given that this case may be more easily resolved on the merits, the Court declines to decide the case solely on procedural grounds. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (in the interest of judicial economy, the court may address a petition's merits without reaching procedural issues); *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001) (declining "to reach the complex questions lurking in the time bar of the AEDPA" where the district court "decided the case on the merits, and on the merits it was right as a matter of law"). Accordingly, the Court will consider the merits of Shorty's ineffective assistance claim.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the

*Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Shorty must show that trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In the last reasoned decision addressing this claim, the Alaska Court of Appeals considered and rejected as follows Shorty's contention that trial counsel should have made greater pre-trial efforts to determine if B.A. had bipolar disorder:

> At the evidentiary hearing in the present case Shorty's trial attorney said that, prior to trial, all she had was a report from her investigator indicating that B.A.'s mother or someone else had thought that B.A. was bipolar. The trial attorney testified that because she never saw any psychiatric or other medical evidence that B.A. had been diagnosed as bipolar, she decided that following up on a possible history of bipolar disorder was not necessary to Shorty's defense. We note that at this same hearing, Leichty's trial attorney testified that prior to the criminal trial, the defense had received a copy of B.A.'s Providence Behavioral Health records, and that these records did not contain a bipolar diagnosis. Shorty's trial attorney was not directly questioned about the Providence records.
> In the post-conviction relief proceeding, Shorty provided no evidence that B.A. had ever been medically or otherwise professionally diagnosed with bipolar disorder. Shorty also produced no evidence that, on the day B.A. was assaulted, she was using any drugs at all. In other words, Shorty was unable to establish the existence of the evidence that he alleged his attorey should have investigated prior to his criminal trial.
> Based on this lack of evidence, the superior court denied Shorty's application. The court found that it was reasonable for Shorty's trial attorney to decide to limit her investigation of these issues because there was no evidence that B.A. had ever been medically diagnosed as bipolar, or that she had used drugs on the day of the assault.
> We agree with the superior court that Shorty's trial attorney's decisions on these issues were not incompetent. Accordingly, we AFFIRM the judgment of the superior court.

Docket No. 13-31 at 4.

Shorty now argues that "B.A.'s own statements about her perceived mental health problems dovetailed with the defense strategy and the other evidence at trial in such a way that no reasonable attorney would have abandoned the inquiry altogether." The statement to which Shorty refers is a August 21, 2003, Sexual Assault Report Team ("SART") Examination Report in which B.A. reported a history of bipolar disorder that was not being treated with medication. The record reflects that the State moved pre-trial to preclude admission of that statement. Docket No. 29-2 at 1 ("The State also moves to preclude admission of a statement from the SART examination that took place on August 21, 2003."). The trial court did not explicitly rule on the admissibility of the statement, and instead instructed the defense to make a prior application before questioning B.A. about the statement.

Shorty now faults counsel for failing to make such application. Ultimately, however, he fails to show that the application would have been successful, particularly given that B.A. had not received a formal diagnosis of bipolar disorder. Although it is well-settled that a criminal defendant has a constitutional right to present a defense, this right is not without limitation. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer,* 523 U.S. 303, 308 (1998); *see Crane,* 476 U.S. at 689-690; *Marshall v. Lonberger,* 459 U.S. 422, 438, n.6, (1983); *Chambers v. Mississippi,* 410 U.S. 284, 302-303 (1973); *Spencer v. Texas,* 385 U.S. 554, 564 (1967). "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due

-9-

Case 3:19-cv-00223-JKS   Document 31   Filed 11/03/20   Page 9 of 12

process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

The right to cross-examine a witness includes the opportunity to show not only that a witness is biased, but also that the testimony is exaggerated or otherwise unbelievable. *Fowler v. Sacramento County Sheriff's Dept.*, 421 F.3d 1027, 1035 (9th Cir. 2005) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) (plurality opinion)). In *Wood v. Alaska*, 957 F.2d 1544, 1549-50 (9th Cir. 1992), the Ninth Circuit laid out a two-part inquiry to determine whether a petitioner's Sixth Amendment rights are violated by restricted cross-examination. The first inquiry is whether the evidence is relevant. *See id.* at 1550. If the evidence is relevant, the next inquiry is whether other legitimate interests outweigh the defendant's interest in presenting the evidence. *See id.* Hence, to show a restriction on cross-examination violates the Confrontation Clause, a defendant must demonstrate "'[a] reasonable jury might have received a significantly different impression of a [witness's] credibility had counsel been permitted to pursue his proposed line of cross-examination.'" *Slovik v. Yates*, 556 F.3d 747, 753 (9th Cir. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1974)). A limitation on cross-examination "does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant." *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999) (internal citation and quotation marks omitted).

Shorty fails to show that any of the evidence regarding B.A.'s alleged bipolar diagnosis, including what Shorty refers to as B.A.'s "self-disclosure of her bipolar tendencies," would have been admissible under the principles enumerated above. Notably, questioning B.A. as to whether she had stated during the SART examination that she was bipolar would not bear on her credibility. To the extent B.A. would have testified that the statement at the examination was incorrect, it does not follow that the statement was an intentional lie. Moreover, Shorty's and B.A.'s recollection of the events at issue was markedly different; the contrast could not be attributed to an inability to perceive what was happening, which could be construed as a

-10-

symptom of bipolar disorder. Rather, Shorty argues that the evidence could have been used to show that B.A. engaged in "impulsive or erratic decision-making." Docket No. 30 at 5. But a review of the trial transcript shows that trial counsel advanced such arguments by focusing on B.A.'s willingness to go for a walk in a wooded area with three men she had just met,[1] and chose a defense theory that undermined B.A.'s credibility by highlighting B.A.'s delay in hysterics following the altercation, a police officer's own initial feeling that the rape allegation was false, and B.A.'s testimony that she was "angry" and "rebellious." In sum, Shorty cannot show that trial counsel was ineffective for failing to make an application as to the inadmissible evidence, nor can he show that he was prejudiced by counsel's inaction.

## V. CONCLUSION AND ORDER

Shorty is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

---

[1] To the extent Shorty contends that B.A.'s alleged "self-disclosure of her bipolar tendencies" would have implications beyond what he characterizes as the "layperson's" understanding of the term to mean "impulsivity and risk-taking," Docket No. 25 at 16, the record does not indicate that he presented on post-conviction review, nor has he presented in this Court, the expert testimony of a mental health professional supporting such assertion.

-11-

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 3, 2020.

s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge